## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

KENNETH ARMSTRONG and
GLORIA ARMSTRONG,

      Plaintiffs,

v.                                                                    Case No: 8:21-cv-2648-CEH-SPF

U.S. BANK NATIONAL
ASSOCIATION,

      Defendant.

_____/

## <u>O R D E R</u>

In this quiet title action, Plaintiffs Kenneth and Gloria Armstrong seek judgment against Defendant U.S. Bank National Association, declaring the mortgage securing their Sarasota home to be null and void, canceling the mortgage of record, and quieting title to the property in Plaintiffs. Before the Court are the parties' cross motions for summary judgment (Docs. 31, 34), the respective responses (Docs. 43, 42), the parties' replies (Doc. 45, 48), and supplemental briefing submitted at the Court's request (Docs. 55, 56). Also, the Court heard argument on the motions. Having considered the motions, argument of counsel, the parties' Stipulation of Agreed Material Facts, and being fully advised in the premises, the Court will deny Plaintiffs' Motion for Summary Judgment and grant Defendant's Motion for Summary Judgment because Defendant U.S. Bank has a valid lien and, therefore, Plaintiffs are not entitled to quiet title.

## I.   FACTS AND BACKGROUND[1]

Plaintiffs Kenneth Armstrong and Gloria Armstrong are husband and wife. Doc. 41 ¶ 2. Plaintiffs jointly own the residential property located at 2012 Leon Avenue, Sarasota, Florida 34234 (the "Subject Property"). *Id.* ¶ 3. On March 17, 2006, Plaintiff Kenneth Armstrong executed a promissory note to BNC Mortgage, Inc. in the amount of $140,000.00 (the "2006 Note"). *Id.* ¶ 4. As security for the Note, Plaintiffs executed and gave a mortgage agreement (the "2006 Mortgage") encumbering the Subject Property. *Id.* ¶ 5. The 2006 Mortgage was executed by Plaintiffs before a notary. *Id.* ¶ 6. The 2006 Mortgage was recorded as Instrument Number 2006061307 in the Public Records of Sarasota County, Florida. *Id.* ¶ 7. The loan maturity date in the 2006 Note and 2006 Mortgage is "April 1, 2036." *Id.* ¶ 8. After the loan closing, a satisfaction was recorded the following month on April 28, 2006, as Instrument Number 2006078761 in the Public Records of Sarasota County, Florida.

Defendant U.S. Bank National Association ("U.S. Bank" or "Defendant") is registered to conduct business in Ohio as a foreign banking corporation. Doc. 30 ¶ 6. U.S. Bank has served as trustee for the (i) Structured Assets Securities Corporation Mortgage Loan Trust, 2006-BC1, and for (ii) the Structured Asset Investment Loan

---

[1] The Court has determined the facts, which are undisputed unless otherwise noted, based on the parties' submissions, including declarations and exhibits, as well as the parties' Stipulation of Agreed Material Facts (Doc. 41). For purposes of summary judgment, the Court presents the facts in the light most favorable to the non-moving party as required by Fed. R. Civ. P. 56.

Trust Mortgage Pass-Through Certificates, Series 2006-3. *Id.* U.S. Bank claims a lien against the Subject Property that is adverse to the Plaintiffs. *Id.* ¶ 10. U.S. Bank was assigned the Mortgage by: (i) Assignment of Mortgage executed on December 29, 2008, recorded on January 9, 2009, in the Official Records of Sarasota County as Instrument #2009002857; and (ii) Corporate Assignment of Mortgage executed on May 30, 2014, recorded on June 4, 2014, in the Official Records of Sarasota County as Instrument #2014065558.

From 2011 to 2013, Plaintiffs submitted a total of seven (7) separate requests for mortgage assistance, citing to financial hardship with affording their loan payments. Doc. 41 ¶ 10. By letter dated February 9, 2011, Plaintiffs requested mortgage assistance. *Id.* Plaintiffs sent additional requests for mortgage assistance on March 10, 2011; August 11, 2011; February 1, 2012; August 10, 2012; November 8, 2012; and January 28, 2013. *Id.* ¶¶ 11–16. The Subject Property remained Plaintiffs' primary residence when they submitted these requests for mortgage assistance from 2011 to 2013. *Id.* ¶ 17.

On October 18, 2013, Plaintiffs executed the "Home Affordable Modification Agreement (Mortgage);" Plaintiffs' signatures on the agreement were notarized. *Id.* ¶ 18; Doc. 34-13 (hereinafter "2013 Loan Modification"). The 2013 Loan Modification was recorded on January 28, 2014, as Instrument Number 2014010277 in the Public Records of Sarasota County, Florida. Doc. 41 ¶ 19. The 2013 Loan Modification was re-recorded to pay the documentary stamp taxes and intangible taxes. *Id.* ¶ 20. The Sarasota County Clerk of the Circuit Court stamped the recorded 2013 Loan

3

Modification with "Receipt # 1709102", "Doc Stamp – Mort: $129.85", and "Intang. Tax: $74.10." *Id.* ¶ 21. The 2013 Loan Modification had a different, later loan maturity date than the 2006 Note and the 2006 Mortgage. *Id.* ¶ 22.

The 2013 Loan Modification contained a New Principal Balance of $222,944.74. Doc. 34-13 at 4. In addition to the original loan amount, the New Principal Balance included unpaid and deferred interest, fees, escrow advances and other costs, collectively referred to in the 2013 Loan Modification as "Unpaid Amounts." *Id.*

Plaintiffs submitted requests for mortgage assistance on February 3, 2014; February 25, 2014; May 7, 2014; August 28, 2014; October 8, 2014; December 11, 2014; April 27, 2015; and October 12, 2015. Doc. 41 ¶¶ 23–30. The Subject Property remained Plaintiffs' primary residence when they submitted these requests for mortgage assistance. *Id.* ¶ 31.

From 2014–2019, the parties litigated the underlying Mortgage in Florida state court foreclosure proceedings in a case styled *U.S. Bank, N.A. v. Armstrong, Sarasota Cnty.* Case No. 2014-CA-004522 (the "2014 Foreclosure Case"). *Id.* ¶ 32. In the 2014 Foreclosure Case, Plaintiffs conceded that the "Armstrongs ultimately entered into a loan modification . . . on or about November 8, 2013" and requested judicial notice of the recorded 2013 Loan Modification. *Id.* ¶ 33.

On October 14, 2019, Kenneth Armstrong filed suit against U.S. Bank in Ohio state court in a case styled *Kenneth Armstrong v. U.S. Bank, N.A., as Trustee for the Structured Asset Securities Corporation Mortgage Loan Trust 2006-Bc1, and for the Structured*

*Asset Investment Loan Trust 2006-3, Hamilton Cnty., Ohio Court of Common Pleas*, Case No. A1904882 (the "Ohio Case"). *Id.* ¶ 34. U.S. Bank did not appear in the action and was defaulted. In support of obtaining a default judgment against U.S. Bank, Kenneth Armstrong submitted a notarized affidavit to the Ohio Court attesting that "I have not made any payments on the loan since my default back in 2007." *Id.* ¶ 35.

The Ohio Court entered a Default Judgment against U.S. Bank (the "Ohio Default Judgment") on August 13, 2020. *Id.* ¶ 36. The Ohio court found "[t]he note dated March 17, 2006, as attached to the complaint, is unenforceable as a result of the expiration of [Ohio's 6-year] statute of limitations" and "[t]he note has been accelerated since December 6, 2010." *Id.* ¶ 37. More than a year after entry of the default judgment, U.S. Bank sought relief from the judgment. The Ohio trial court denied U.S. Bank's motion (Doc. 46-1), and U.S. Bank appealed. Doc. 53-1 at 3. On April 12, 2023, the Ohio appellate court affirmed the Ohio Default Judgment in favor of Kenneth Armstrong and against U.S. Bank. Doc. 53-1.

On November 10, 2021, Plaintiffs initiated this quiet title action against Defendant U.S. Bank. In the Complaint, Plaintiffs seek the following relief: declare U.S. Bank's mortgage to be null and void; cancel the mortgage of record; quiet title to the Subject Property in Plaintiffs' favor and against U.S. Bank and all persons claiming under Defendant; and granting costs of this action.  Doc. 1 at 4.

Plaintiffs move for summary judgment (Doc. 31) in their favor arguing that because the Ohio state court judgment found the promissory note evidencing the mortgage loan to be no longer enforceable, there is no indebtedness under the

mortgage. And because the mortgage does not secure anything, Plaintiffs contend quiet title is warranted.

U.S. Bank moves for summary Judgment (Doc. 34) in its favor on Plaintiffs' quiet title claim. In support, it argues that the 2013 Loan Modification was new debt, for which intangible and documentary stamp taxes were paid. Because this constitutes a valid lien on the Subject Property, U.S. Bank argues Plaintiffs are not entitled to quiet title. U.S. Bank additionally moves for summary judgment on its affirmative defenses of failure to state a claim, ratification, equitable estoppel, fraud and unclean hands, and failure to mitigate.

## II.   LEGAL STANDARD

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of stating the basis for its motion and identifying those portions of the record demonstrating the absence of genuine issues of material fact. *Celotex*, 477 U.S. at 323; *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259–60 (11th Cir. 2004). That burden can be discharged if the moving party can show the court that there is "an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325.

When the moving party has discharged its burden, the nonmoving party must then designate specific facts showing that there is a genuine issue of material fact. *Id.*

at 324. Issues of fact are "genuine only if a reasonable jury, considering the evidence present, could find for the nonmoving party," and a fact is "material" if it may affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). In determining whether a genuine issue of material fact exists, the court must consider all the evidence in the light most favorable to the nonmoving party. *Celotex*, 477 U.S. at 323. However, a party cannot defeat summary judgment by relying upon conclusory allegations. *See Hill v. Oil Dri Corp. of Ga.*, 198 F. App'x 852, 858 (11th Cir. 2006).

The standard of review on cross-motions for summary judgment does not differ from the standard applied when only one party files a motion, but simply requires a determination of whether either of the parties deserves judgment as a matter of law on the facts that are not disputed. *Am. Bankers Ins. Group v. United States*, 408 F.3d 1328, 1331 (11th Cir. 2005). The Court must consider each motion on its own merits, resolving all reasonable inferences against the party whose motion is under consideration. *Id.* The Eleventh Circuit has explained that "[c]ross-motions for summary judgment will not, in themselves, warrant the court in granting summary judgment unless one of the parties is entitled to judgment as a matter of law on facts that are not genuinely disputed." *United States v. Oakley*, 744 F.2d 1553, 1555 (11th Cir. 1984). Cross-motions may, however, be probative of the absence of a factual dispute where they reflect general agreement by the parties as to the controlling legal theories and material facts. *Id.* at 1555–56.

## III.   JURISDICTION

The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the parties are diverse and the amount in controversy exceeds $75,000. Plaintiffs are residents of Sarasota and citizens of the State of Florida. Defendant U.S. Bank is not a citizen of Florida.[2] In a quiet title action, the amount in controversy for determining subject matter jurisdiction is the value of the property. *Orton v. Mathews*, 572 F. App'x 830, 831 (11th Cir. 2014) (citing *Frontera Transp. Co. v. Abaunza*, 271 F. 199, 201 (5th Cir. 1921)).

## IV.   DISCUSSION

Plaintiffs bring this action to quiet title in their favor as to the Subject Property. In support, Plaintiffs present the Ohio Default Judgment which found the $140,000 promissory note signed by Kenneth Armstrong in March 2006 to be unenforceable due to the expiration of Ohio's six-year statute of limitations. Doc. 30-6. Plaintiffs argue that by virtue of the Ohio Default Judgment, there is nothing owed by the Plaintiffs to U.S. Bank. Plaintiffs request this Court give full faith and credit to the Ohio Default Judgment and quiet title to the Subject Property in their names.

### A. Full Faith and Credit

Plaintiffs argue that the Ohio Default Judgment is entitled to full faith and credit because it is now firm, final, and unappealable. Doc. 56 at 2. U.S. Bank argues the

---

[2] In *Wachovia Bank v. Schmidt*, the Supreme Court held that, for the purposes of diversity jurisdiction, a national bank is a citizen of the state "designated in its articles of association as its main office," and is not a citizen of each state in which the bank has established branch operations. 546 U.S. 303, 313, 318, (2006).

Ohio Default Judgment is not dispositive of the mortgage lien and quiet title action and that this Court need not give it full faith and credit because the Ohio Default Judgment does not address the parties' 2006 mortgage or the 2013 Modification. Doc. 55 at 1–2. Additionally, U.S. Bank argues that an exception to the Full Faith and Credit Clause applies here because the Ohio Default Judgment contradicts Florida law regarding the statute of limitations and repose and the enforceability of mortgage liens.

Pursuant to the Full Faith and Credit Act, 28 U.S.C. § 1738, "a federal court [must] give preclusive effect to a state court judgment to the same extent as would courts of the state in which the judgment was entered." *Kahn v. Smith Barney Shearson Inc.*, 115 F.3d 930, 933 (11th Cir. 1997) (quoting *Battle v. Liberty Nat. Life Ins. Co.*, 877 F.2d 877, 882 (11th Cir. 1989)). Thus, absent an exception, which the Court finds is lacking here, the Ohio Default Judgment is entitled to full faith and credit in this action.

Where the prior judgment was rendered by a state court, "then the collateral estoppel law of that state must be applied to determine the judgment's preclusive effect." *In re St. Laurent*, 991 F.2d 672, 675–76 (11th Cir. 1993), *as corrected on reh'g* (June 22, 1993); *see also Corzin v. Fordu* (*In re Fordu*), 201 F.3d 693, 703 (6th Cir. 1999) ("When a federal court is asked to give preclusive effect to a state court judgment, the federal court must apply the law of the state in which the prior judgment was rendered in determining whether and to what extent the prior judgment should be given preclusive effect in a federal action."). Thus, the Court looks to Ohio law to determine the preclusive effect of the Ohio Default Judgment.

Under Ohio law, "[t]he doctrine of *res judicata* encompasses the two related concepts of claim preclusion, also known as *res judicata* or estoppel by judgment, and issue preclusion, also known as collateral estoppel." *O'Nesti v. DeBartolo Realty Corp.*, 862 N.E.2d 803, 806 (Ohio 2007) (citing *Grava v. Parkman Twp.*, 653 N.E.2d 226, 228 (Ohio 1995)). Invoking the principles of issue preclusion, Plaintiffs argue that the Ohio Default Judgment precludes U.S. Bank from re-litigating the issue of what statute of limitations applies to the promissory note and what is owed to U.S. Bank under the note. Plaintiffs further argue that U.S. Bank's failure to raise the 2013 Loan Modification as an affirmative defense in the Ohio litigation precludes U.S. Bank from litigating the defense in this action.

Additionally, under Ohio law, "[t]he doctrine of issue preclusion, also known as collateral estoppel, holds that a fact or a point that was actually and directly at issue in a previous action, and was passed upon and determined by a court of competent jurisdiction, may not be drawn into question in a subsequent action between the same parties or their privies, whether the cause of action in the two actions be identical or different." *Fort Frye Tchrs. Ass'n, OEA/NEA v. State Emp. Rels. Bd.*, 692 N.E.2d 140, 144 (Ohio 1988). A plaintiff must establish four prerequisites for the application of Ohio's issue preclusion: "1) A final judgment on the merits in the previous case after a full and fair opportunity to litigate the issue; 2) The issue must have been actually and directly litigated in the prior suit and must have been necessary to the final judgment; 3) The issue in the present suit must have been identical to the issue in the prior suit; 4) The party against whom estoppel is sought was a party or in privity with the party

10

to the prior action." *In re Sweeney*, 276 B.R. 186, 189 (B.A.P. 6th Cir. 2002); *see also In re Bruce*, 593 B.R. 765, 773 (Bankr. S.D. Ohio 2018) (same).  Applying these elements to the case at bar, the Ohio Default Judgment is entitled to Full Faith and Credit in its determination that the $140,000 note is unenforceable by U.S. Bank due to the expiration of Ohio's six-year statute of limitations and the March 2006 Note has been accelerated since December 6, 2010. But, it is not entitled to preclusive effect as to the 2013 Loan Modification.[3]

### 1. Final Judgment on the Merits After Full & Fair Opportunity

In Ohio, a default judgment carries the weight of a final decision on the merits that may serve to bar later claims. *See Frazier v. Matrix Acquisitions, LLC*, 873 F. Supp. 2d 897, 901 (N.D. Ohio 2012) (collecting cases). The Ohio Default Judgment, which has now been affirmed on appeal,[4] concluded as a matter of law that the Note securing the mortgage "is unenforceable as a result of the expiration of the statute of limitations." The Ohio Court applied Ohio law because payment on the note was due in Ohio. This is consistent with Florida law which recognizes that Florida's "rule for choice of law governing the validity and interpretation of contracts looks to the law of the place of contracting and the law of the place of performance." *Morgan Walton*

---

[3] In referring to the loan, the Ohio Default Judgment makes no mention of the 2013 Modification or 2006 mortgage, only the original 2006 Note. As discussed further below, the Court disagrees with Plaintiffs that application of collateral estoppel means nothing is due to U.S. Bank such that Plaintiffs are entitled to quiet title. Rather, U.S. Bank has some valid lien interest by virtue of the 2013 Loan Modification.

[4] To the extent that U.S. Bank argues that the Ohio Default Judgment is not final, that argument is rejected as U.S. Bank's legal challenges to the order have now concluded.

*Properties, Inc. v. Int'l City Bank & Tr. Co.*, 404 So. 2d 1059, 1061 (Fla. 1981). Plaintiffs argue that the finality of the Ohio Default Judgment settles, as a matter of law, which state's statute of limitations law to apply to the Note. And the Ohio Court decided Ohio's law applies. If Defendant wanted to challenge the application of Ohio's six-year statute of limitations, Plaintiffs argue that Defendant must have done so in the proceedings before the Ohio trial court. As it pertains to the 2006 Note, the Court agrees. For purposes of determining whether a party had a full and fair opportunity to litigate an issue, "[i]t is only necessary that the opportunity to fully and fairly litigate the issues be available; it is not required that the party have exercised that opportunity." *In re Doll*, 585 B.R. 446, 457 (Bankr. N.D. Ohio 2018) (citations omitted).

### 2. Actually and Directly Litigated and Necessary to the Final Judgment

As to whether the expiration of the statute of limitations was actually litigated and necessary to the judgment, the Court looks to the Ohio Default Judgment itself. *See In re Doll*, 585 B.R. at 458 ("in order to decide whether an issue was 'actually and directly litigated in the prior suit and . . . necessary to the final judgment,' the court looks to the language of the Default Judgment in order to determine whether the state court made an 'express adjudication' that allows an interpreting court to ascertain its findings of fact and/or conclusions of law"). The Ohio Default Judgment specifically found that the March 17, 2006, note was unenforceable as a result of the expiration of the Ohio statute of limitations. Doc. 30-6 at 1. The Ohio Default Judgment also indicated no monthly payments have been due on the 2006 Note since December 6,

2010. *Id.* U.S. Bank argues this finding is based on Kenneth Armstrong's inaccurate affidavit. However, even if the Ohio court got it wrong, it is not up to this Court to second guess the Ohio state court's judgment. *See Graham v. R.J. Reynolds Tobacco Co.*, 857 F.3d 1169, 1185 (11th Cir. 2017) ("Under the Full Faith and Credit Act, federal courts generally should respect state court judgments, even where erroneous.") (citation omitted). Of note, however, the Ohio Default Judgment confined itself to the 2006 Note and did not address the 2013 Loan Modification.

As to whether the 2013 Loan Modification was actually and directly litigated and necessary to the Final Judgment, the Court again considers the Ohio Default Judgment. As a preliminary matter, it is clear that neither Plaintiff's Ohio Complaint, the Ohio state court, nor the Ohio appellate court, addressed the merits of the 2013 Loan Modification.[5] *See* Doc. 53-1 at 6 (wherein the Ohio Appellate Court "decline[s] to address the merits of U.S. Bank's proffered defense" and observes the "trial court did not address whether U.S. Bank had proffered a meritorious defense"). The 2013 Loan Modification is a separate distinct legal obligation—signed by both Plaintiffs, whose signatures were notarized. The mortgage agreement was filed in the Florida public records by the Clerk of Court, for which intangible and documentary stamps were paid, and which was governed by Florida law. The Ohio Default Judgment

---

[5] The Ohio state court briefly referenced the 2013 Loan Modification in its Order denying U.S. Bank's motion to set aside default judgment but did not address the merits of the defense. Doc. 46-1. Rather, the court's consideration of the document was limited to the finding that Armstrong's counsel's omission of the 2013 Loan Modification from the motion for default judgment did not constitute a fraud on the court. *Id.* at 7.

makes no mention of the 2013 Loan Modification. Doc. 30-6.  In *Hinze v. Robinson* (*In re Robinson*), 242 B.R. 380 (Bankr. N.D. Ohio 1999), that court noted that "[u]nder Ohio law a default judgment obviates the plaintiff's burden to prove the elements of the claim alleged." *Id.* at 386 (citing *Ohio Valley Radiology Assoc., Inc. v. Ohio Valley Hosp. Ass'n*, 502 N.E.2d 599, 603 (Ohio 1986)). That court concluded it was "reasonable to assume that normally issues are not 'actually litigated' for purposes of the collateral estoppel doctrine when a state court grants a motion for default judgment." *In re Sweeney*, 276 B.R. 186, 193 (B.A.P. 6th Cir. 2002) (quoting *In re Robinson*, 242 B.R. at 386). In order to "reconcile the 'actual litigation' requirement of collateral estoppel with the realities of default judgments," Ohio courts have held that "the state court must decide the merits of the case, and the court being asked to give preclusive effect to a default judgment in a subsequent litigation must have some reliable way of knowing that the decision was made on the merits." *In re Sweeney*, 276 B.R. at 194. Thus, "the default court must state what findings and conclusions, if any, it has reached in arriving at the judgment. Those findings and conclusions will have preclusive effect." *Id.*

With that direction from the Sixth Circuit applying Ohio law, it follows that issues not submitted to the state court for determination, nor which formed the basis of the findings and conclusions in the default judgment, would not be entitled to preclusive effect because they were not actually and directly litigated and not necessary to the final judgment. Plaintiffs did not present the 2013 Loan Modification to the Ohio Court for its consideration, and as noted above, it is clear the Ohio courts did

not consider the merits of the 2013 Loan Modification. Plaintiffs sought only a determination as to the 2006 Note. As discussed at the hearing before this Court on the parties' summary judgment motions, Plaintiff's Ohio Complaint was silent regarding the 2013 Loan Modification. "The party seeking to invoke issue preclusion has the burden to establish its applicability." *In re Henkel*, 490 B.R. 759, 770 (Bankr. S.D. Ohio 2013). Regarding the preclusive effect of the Ohio Default Judgment on the issue of the 2013 Loan Modification, Plaintiffs fail to carry their burden.

### 3. Identical Issues

Similar to the requirement that an issue be actually litigated, a party seeking to assert preclusion must show that the issue actually litigated was identical. "Collateral estoppel precludes relitigation only when the identical issue was actually decided in the former case." *Goodson v. McDonough Power Equip., Inc.*, 443 N.E.2d 978, 987 (Ohio 1983). As discussed above, Kenneth Armstrong did not present for the Ohio court's consideration the 2013 Loan Modification and the Ohio courts explicitly declined to consider the merits of same.

### 4. Same Party or Privities

For *res judicata* to apply, "one of the requirements is that the parties to the subsequent action must be identical to or in privity with those in the former action." *Kirkhart v. Keiper*, 805 N.E.2d 1089 (Ohio 2004). The Ohio Supreme Court stated that privity does not require a "contractual or beneficiary relationship" and that "a mutuality of interest, including an identity of desired result, creates a privity" between parties for purposes of claim preclusion." *Brown v. Dayton*, 730 N.E.2d 958 (Ohio

15

2000). Kenneth Armstrong and U.S. Bank were parties to both the Ohio action and the instant action. Although Gloria Armstrong was not a party to the Ohio state court action, as the co-owner of the Subject Property, she has a mutuality of interest with Kenneth Armstrong and would be considered in privity with him. This prong is satisfied. Thus, the Ohio Default Judgment is entitled to preclusive effect as to those matters actually litigated as discussed above.

*5. Exception to Full Faith & Credit*

U.S. Bank argues that the Ohio Default Judgment should not be given full faith and credit because it contradicts Florida statutes and Florida law. Specifically, under Florida law, the statute of limitations to enforce mortgage agreements encumbering Florida real property runs from the date of each new default. Plaintiffs respond that the Ohio Default Judgment is in the form of a declaratory judgment, which Florida law recognizes. Further, Plaintiffs submit the default judgment is not offensive to Florida law because it comes into play only tangentially to support the quiet title relief sought.

The Florida Supreme Court has recognized there is "no public policy exception to the full faith and credit due final judgments of a sister state." *Ledoux-Nottingham v. Downs*, 210 So. 3d 1217, 1222 (Fla. 2017). The *Ledoux-Nottingham* court further acknowledged that Florida is required to enforce a valid out-of-state judgment despite the fact that entry of a similar judgment by a Florida court under the same circumstances would be contrary to Florida law. *Id.* at 1223. U.S. Bank fails to show an exception applies.

16

Although the Court gives full faith and credit to the Ohio Default Judgment, that does not translate into Plaintiffs' title being free of any valid cloud.

**B.    Quiet Title Action in Florida**

The parties agree Florida law applies to Plaintiffs' single claim to quiet title. Under Florida law, a quiet title action may be brought by a property owner to clear a cloud from the title and eliminate any other claims to title. *See* Fla. Stat. § 65.031; *Wane v. Loan Corp.*, 552 F. App'x 908, 913 (11th Cir. 2014). "A claim for quiet title in Florida 'must not only show title in the plaintiff to the lands in controversy, but also that a cloud exists, before relief can be given against it.'" *Lane v. Guar. Bank*, 552 F. App'x 934, 936 (11th Cir. 2014) (quoting *Stark v. Frayer*, 67 So. 2d 237, 239 (Fla. 1953)); *see also McDaniel v. McElvy*, 108 So. 820, 830 (1926) (plaintiff's proof "must show with clearness, accuracy, and certainty, not only the validity of his own title, but the invalidity or inferiority of the defendant's title or claim"). It is undisputed that Plaintiffs hold title to the Subject Property. Thus, in order to prevail, Plaintiffs must demonstrate the 2006 Mortgage and the 2013 Loan Modification are unenforceable and, consequently, constitute an invalid cloud on Plaintiffs' title to the Subject Property. However, if U.S. Bank has a valid lien, Plaintiffs are not entitled to quiet title.

U.S. Bank urges that its mortgage on the property is valid because of the 2013 Loan Modification. Plaintiffs respond that the 2013 Loan Modification has no import because it derives solely from the 2006 Note which is unenforceable. In support of their position, Plaintiffs argue, "there can be no mortgage unless there is a debt to be secured

thereby or some obligation to pay money." Doc. 31-1 at 5–6 (citing *Nelson v. Stockton Mortg. Co.*, 100 Fla. 1191, 1197, 130 So. 764, 766 (1930)); *see also Kremser v. Tonokaboni*, 356 So. 2d 1331, 1332 (Fla. 3d DCA 1978) ("There being no debt or obligation upon which the mortgage could rest, the mortgage could not have been foreclosed by Stewart and was thus unenforceable by him."). Relying on this principle, Plaintiffs steadfastly argue that once the 2006 Note is deemed unenforceable, everything that follows is null and void and nothing is owed on the property. Simply put, Plaintiffs claim no debt, no mortgage. But that is where Plaintiffs' argument misses the mark. There is still a debt, and the Florida Supreme Court explains why.

In *Bank of Miami Beach v. Fidelity & Casualty Company of New York*, 239 So. 2d 97 (Fla. 1970), the Florida Supreme Court clarified that "the rule of the *Nelson* case . . . is applicable only when there is *no obligation whatsoever* by way of a debt, loan, assumption of liability, or under equitable principles of estoppel, for which the mortgage lien should stand as security." *Id.* at 100 (emphasis added). The *Bank of Miami* Court specifically held that even if a note evidencing the indebtedness fails, it will not necessarily invalidate a valid mortgage. *Id.* at 99. Thus, whether Plaintiffs can prevail on their action to quiet title turns on whether there exists any other debt, obligation, or assumption of liability by Plaintiffs for which U.S. Bank's mortgage lien should stand as security. As discussed in the section above, the Ohio Default Judgment is entitled to preclusive effect as to the 2006 $140,000 Note. But since the Ohio Default Judgment does not have preclusive effect as it relates to the 2013 Loan Modification, U.S. Bank still has a valid lien interest in the Subject Property, precluding quiet title.

18

At oral argument, Plaintiffs argued that the Ohio Default Judgment concluded that nothing is due under the loan and that the Ohio Court already adjudicated the issue of what amount was due. Plaintiffs' argument improperly expands the scope of the Ohio Default Judgment's preclusive effect. The Ohio court found that the 2006 Note signed by Kenneth Armstrong was unenforceable as a result of the expiration of the statute of limitations. That is not the same as saying nothing is owed on the property or that U.S. Bank has no valid lien on the property.

Under Florida law, the lien of a mortgage can include taxes paid by the lender. *See* Fla. Stat. 95.281. Plaintiffs argue the only "debt" is the 2006 Note. But the 2013 Loan Modification included more than the $140,000 from the 2006 Note. It included escrow amounts (taxes and insurance), other fees and costs, in addition to the unpaid balance of the $140,000, plus accumulated interest. Under Florida law, the statute of limitations on a lien that includes taxes paid by a mortgagee is five years from the date of payment. It is undisputed that the 2013 Loan Modification included taxes and insurance paid by U.S. Bank (Doc. 34-13 at 4) and that U.S. Bank has continued to pay for the property taxes and insurance on the Subject Property (Doc. 34-27 at 45).

Although Plaintiffs argue that without the 2006 Note, there is nothing owed under the 2013 Loan Modification, the *Bank of Miami, supra,* case instructs otherwise. The 2013 Loan Modification, which was signed by both Kenneth and Gloria Armstrong, is an "obligation" by way of a debt, loan, or assumption of liability. *See Bank of Miami*, 239 So. 2d at 100. Their signatures were notarized. The Loan had a

new maturity date,[6] was governed by Florida law, and was recorded by the Clerk of Court. Plaintiffs received the consideration of re-amortizing their mortgage, U.S. Bank's payment of documentary stamp and intangible taxes, and U.S. Bank's payment of taxes and insurance, in exchange for their agreement to make monthly payments on the mortgage. U.S. Bank has been paying taxes and insurance on the property. Even giving full faith and credit to the Ohio Default Judgment, which this Court must do, does not invalidate the taxes, insurance, and other "unpaid amounts" that were a part of the 2013 Loan Modification agreed to by both of the Armstrongs and which U.S. Bank continues to pay. Those unpaid amounts are an obligation or assumption of liability by the Armstrongs for which U.S. Bank has a lien on the Subject Property.[7] *Bank of Miami Beach*, 239 So. 2d at 100.

The Armstrongs submit that the Ohio Default Judgment decided Ohio's statute of limitations applies. That is the case as to the 2006 Note, which was the subject of the Ohio judgment.  However, the Ohio Default Judgment is not dispositive of all lien interests claimed by U.S. Bank. As discussed above, the Ohio Default Judgment did not give preclusive effect to the 2013 Loan Modification. Thus, the Court turns to Florida law to determine if the 2013 Loan Modification constitutes a valid cloud, precluding quiet title.

---

[6] The maturity date on the 2013 Loan Modification is April 1, 2040. Doc. 34-13 at 4.
[7] Although U.S. Bank would not be able to recover the $140,000 because the 2006 Note is unenforceable, the Court need not determine the amount of the lien interest to which U.S. Bank is entitled as that is not an issue before this Court.

In general, the Florida Supreme Court upholds the belief that "[t]he ends of justice require that the doctrine of *res judicata* not be applied so strictly so as to prevent mortgagees from being able to challenge multiple defaults on a mortgage." *deCancino v. Eastern Airlines, Inc.*, 283 So.2d 97, 98 (Fla.1973). Thus, the Court recognized that the doctrine of *res judicata* will "not necessarily bar successive foreclosure suits, regardless of whether or not the mortgagee sought to accelerate payments on the note in the first suit." *Singleton v. Greymar Assocs.*, 882 So.2d 1004, 1008 (Fla. 2004). This is because "[a] new default, based on a different act or date of default not alleged in the dismissed action, creates a new cause of action." *Star Funding Solutions, LLC v. Krondes*, 101 So.3d 403, 403 (Fla. 4th DCA 2012) (citing *Singleton*, 882 So.2d at 1005). Florida courts have recognized this holding even where the prior action was adjudicated on the merits. *See Singleton*, 882 So.2d at 1007 (citing *Capital Bank v. Needle*, 596 So.2d 1134, 1138 (Fla. 4th DCA 1992)). Thus, Florida law does not prohibit U.S. Bank from pursuing a future state foreclosure action as it relates to any remaining lien interest it holds in the event of a subsequent default by the Plaintiffs. *See U.S. Bank Nat'l Ass'n v. Bartram*, 140 So.3d 1007, 1014 (Fla. 5th DCA 2014) (holding that a subsequent default creates a new cause of action for statute of limitations purposes even where a prior case was dismissed on its merits). Stated another way, "[w]hile a foreclosure action with an acceleration of the debt may bar a subsequent foreclosure action based on the same event of default, it does not bar subsequent actions and acceleration based upon

different events of default." *Evergrene Partners, Inc. v. Citibank, N.A.*, 143 So.3d 954 (Fla. 4th DCA 2014) (citing *Singleton*, 882 So.2d at 1008).

Relevant here, because the 2013 Loan Modification gives rise to potential different or subsequent events of default on the amounts still owed by Plaintiffs, U.S. Bank has a valid lien, and the lien does not constitute an invalid cloud on the title to the Subject Property. Additionally, even though U.S. Bank did not prevail on its 2014 foreclosure action, the above authority supports that a subsequent action based on subsequent defaults is permitted. Because the lien interest created by the 2013 Loan Modification is valid, Plaintiffs' claim to quiet title fails. *See 2010-3 SFR Venture, LLC v. Garcia*, 149 So. 3d 123, 125 (Fla. 4th DCA 2014) ("Because the bank's mortgage may be enforced through an action alleging a subsequent default, it is a valid lien and does not constitute a cloud on title to support a quiet title claim.") (citation omitted).

Additionally, Florida law recognizes that a lien of a mortgage or other instrument encumbering real property shall terminate after the expiration of five years after the date of maturity "[i]f the final maturity of an obligation secured by a mortgage is ascertainable from the record of it." Fla. Stat. § 95.281(1)(a). Florida courts have interpreted this language to mean, "the maturity date must be ascertainable by one who reads the county records." *Rodriguez v. Bank of Am., N.A.*, 49 F. Supp. 3d 1154, 1159 (S.D. Fla. 2014) (citing *Amador v. Bank of New York, Inc.*, No. 13–Civ–23252, 2013 WL 6157932, at *3 (S.D. Fla. Nov. 8, 2013) (J. Graham) (quoting *Layton v. Bay Lake Ltd. Partnership*, 818 So.2d 552, 553 (Fla. 2d DCA 2002)). Here, the recorded 2013 Loan Modification has a maturity date of April 1, 2040. Doc. 34-13 at 4. Therefore,

Florida Statute § 95.281(1)(a) is not triggered until five years later on April 1, 2045. And it is on that date that the lien on Plaintiffs' property would be extinguished. Since the 2013 Loan Modification on Plaintiffs' title constitutes a valid lien that does not terminate until April 1, 2045, Plaintiffs' claim to quiet title fails.

Plaintiffs' motion for summary judgment to quiet title is due to be denied.

**C. U.S. Bank's Defenses**

In its motion, U.S. Bank argues it is entitled to summary judgment on its affirmative defenses of failure to state a cause of action to quiet title; equitable estoppel; fraud and unclean hands; failure to mitigate; and ratification.

*1. Failure to State a Claim*

U.S. Bank argues it is entitled to summary judgment on Plaintiff's sole claim of quiet title because Plaintiff cannot establish that U.S. Bank's lien is invalid. Because Plaintiffs fail to account for U.S Bank's mortgage lien interest arising out of the 2013 Loan Modification, U.S. Bank argues Plaintiffs cannot obtain quiet title as to the Subject Property. For the reasons discussed above, the Court agrees. The Ohio Default Judgment did not give preclusive effect to the 2013 Loan Modification—at least to the extent U.S. Bank's lien interest exceeds the $140,000 found to be unenforceable—and therefore, U.S. Bank still holds a valid lien, barring Plaintiffs' claim to quiet title. U.S. Bank is entitled to summary judgment on this defense as stated herein.

Although U.S. Bank is entitled to summary judgment in its favor on Plaintiffs' quiet title claim, the Court will briefly address the other defenses.

*2. Equitable Estoppel*

23

U.S. Bank seeks summary judgment on its affirmative defense of equitable estoppel because Plaintiffs submitted repeated requests to obtain a loan modification, U.S. Bank relied on Plaintiffs' representations that they intended to obtain a loan modification, and yet Kenneth Armstrong took a contrary position by initiating an action in Ohio without mentioning the 2013 Loan Modification. U.S. Bank argues that Plaintiffs should be equitably estopped from obtaining quiet title where they misrepresented the status of the loan in the Ohio action, all the while U.S. Bank was advancing funds to satisfy Plaintiffs' property tax and insurance payments.

Equitable estoppel must be applied with great caution, and the party raising estoppel must prove its elements by clear and convincing evidence. *Watson Clinic, LLP v. Verzosa*, 816 So.2d 832, 834 (Fla. 2d DCA 2002). The elements of equitable estoppel are "(1) a representation as to a material fact that is contrary to a later-asserted position, (2) reliance on that representation, and (3) a change in position detrimental to the party claiming estoppel, caused by the representation and reliance thereon." *State v. Harris*, 881 So. 2d 1079, 1084 (Fla. 2004) (citing *State Dep't of Revenue v. Anderson*, 403 So.2d 397, 400 (Fla. 1981)).

In response, Plaintiffs argue this defense fails because U.S. Bank does not identify what misrepresentations were made to support the defense. To the extent U.S. Bank is referring to the statements made by Kenneth Armstrong in the affidavit submitted to the Ohio court, Plaintiffs argue that such statements occurred after the loan modification, and thus could not have served as a basis for U.S. Bank's reliance.

In reply, U.S. Bank clarifies that it is the representations (not misrepresentations) that Plaintiffs made to U.S. Bank to obtain the loan modification in the first instance that were contrary to the later-asserted position by Kenneth Armstrong in the Ohio action that no payments had been made. At a minimum, as it relates to U.S. Bank's continued payment of the insurance and taxes on the Subject Property where Plaintiffs have continued to reside, the principles of equitable estoppel support that Plaintiffs should not be entitled to quiet title.

*3. Plaintiffs' Fraud & Unclean Hands*

Defendant argues it is entitled to summary judgment on its affirmative defense of fraud and unclean hands because Kenneth Armstrong obtained a default judgment against U.S. Bank in Ohio on the basis of an affidavit that contradicts his deposition testimony and by his failure to disclose the 2013 loan modification agreement to the Ohio court.

Regarding the failure to disclose the 2013 Loan Modification, the Ohio court has already determined there was no fraud in the omission. As for U.S Bank's claim that Mr. Armstrong's deposition testimony contradicts the affidavit submitted to the Ohio court in support of the default judgment obtained, review of the deposition testimony reveals that, at most, Mr. Armstrong equivocates and ultimately testifies that on the day of the deposition he could not recall if any payments had been made.

"Under the doctrine of unclean hands, '[o]ne who has acted in bad faith, resorted to trickery and deception, or been guilty of fraud, injustice or unfairness will appeal in vain to a court of conscience, even though in his wrongdoing he may have

kept himself strictly within the law.'" *Gastaldi v. Sunvest Resort Cmtys., LC*, No. 08-62076-CIV, 2010 WL 457243, at *8 (S.D. Fla. Feb. 3, 2010) (quoting *Dooley v. Weil* (*In re Garfinkle*), 672 F.2d 1340, 1346 n.7 (11th Cir. 1982)). Kenneth Armstrong's lack of recollection at his 2022 deposition does not necessarily contradict statements made in his 2020 affidavit and does not support a finding of deceit or trickery.

### 4. Failure to Mitigate

U.S. Bank moves for summary judgment on its affirmative defense that Plaintiffs failed to mitigate their damages. The Court agrees with Plaintiffs that this defense is inapplicable where, as here, Plaintiffs are not seeking damages. "[T]he failure to mitigate damages, or, indeed, the successful effort to do so, does not defeat the plaintiffs' right to recovery, but only reduces the amount of his recoverable damages." *Juv. Diabetes Rsch. Found. v. Rievman*, 370 So. 2d 33, 36 (Fla. 3d DCA 1979). Plaintiffs are not seeking to recover money damages. Thus, a failure to mitigate does not apply.

### 5. Ratification

U.S. Bank seeks summary judgment on its defense of ratification. Under Florida law, "[r]atification is conduct that indicates an intention, with full knowledge of the facts, to affirm a contract which the person did not enter into or which is otherwise void or voidable." *Citron v. Wachovia Mortg. Corp.*, 922 F. Supp. 2d 1309, 1321 (M.D. Fla. 2013) (citing *Still v. Polecat Indus., Inc.*, 683 So.2d 634 (Fla. 3d DCA 1996)). U.S. Bank fails to satisfy its burden of establishing that this defense applies on the facts here because at the time Plaintiffs entered into the 2013 Loan Modification, the prior loan

and mortgage were not deemed void or voidable. Thus, there was no affirmation of an unenforceable contract of which Plaintiffs had knowledge.

## V.    CONCLUSION

By their quiet title action, Plaintiffs seek a declaration by this Court that U.S. Bank has no valid claim of lien. For the reasons discussed above, U.S. Bank still maintains a valid lien interest in the Subject Property, and thus Plaintiffs' claim to quiet title will be denied.

Accordingly, it is

**ORDERED AND ADJUDGED**:

1.    Plaintiffs' Motion for Summary Judgment (Doc. 31) is **DENIED**.

2.    Defendant's Motion for Summary Judgment (Doc. 34) is **GRANTED** to the extent that the Court finds that the Defendant has a valid lien on the Subject Property such that Plaintiffs are not entitled to quiet title to the property as against this Defendant.

3.    The Clerk is directed to enter judgment in favor of Defendant U.S. Bank, and against Plaintiffs, Kenneth Armstrong and Gloria Armstrong.

4.    Thereafter, the Clerk is directed to close this case.

**DONE AND ORDERED** in Tampa, Florida on April 4, 2024.

Charlene Edwards Honeywell
Charlene Edwards Honeywell
United States District Judge

Copies to: Counsel of Record and Unrepresented Parties, if any

27